25CA0731 Peo in Interest of PA 10-09-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0731
Weld County District Court No. 24JV60
Honorable W. Troy Hause, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of P.A., C.S., N.M., and M.A., Children,

and Concerning K.A.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE PAWAR
Freyre and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 9, 2025

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Sandra K. Owens, Counsel for Youth, Greeley, Colorado, for P.A. and C.S.

Josi McCauley, Guardian Ad Litem, for N.M. and M.A.

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1    K.A. (mother) appeals the juvenile court's judgment adjudicating P.A., M.A., N.M., and C.S. (the children) dependent or neglected.  We affirm.

## I.    Background

¶ 2    In August 2024, the Weld County Department of Human Services (Department) filed a petition in dependency and neglect regarding the children.  The petition alleged, among other things, alcohol abuse and domestic violence in the family home, physical abuse of one of the children, and mother's mental health affecting her ability to care for the children.

¶ 3    Mother requested a jury trial.  The court scheduled a four-day jury trial.  On the third day of trial, mother — who was represented by counsel throughout the proceedings — admitted to paragraph 5(a) of the petition, which read that "[t]he children's environment is injurious to their welfare."  *See* § 19-3-102(1)(c), C.R.S. 2025.  The juvenile court accepted mother's admission and entered the adjudication.

¶ 4    Mother now appeals, claiming that (1) her admission to the petition was not knowing and voluntary, (2) the juvenile court made an evidentiary error regarding a child's recorded statements, and (3)

1

she received ineffective assistance of counsel. We conclude that none of these arguments warrant relief.

## II. Mother's Admission Was Knowing and Voluntary

¶ 5 Mother contends her admission to the petition in dependency or neglect was not knowing or voluntary. We perceive no error.

### A. Relevant Law and Standard of Review

¶ 6 After a department of human services files a petition in dependency and neglect, a parent may confess, stipulate, or elect not to contest all or part of the petition, provided that the parent is "fully advised" as to all their rights and "the possible consequences of a finding that a child or youth is dependent or neglected." C.R.J.P. 4.15(c); *People in Interest of N.G.*, 2012 COA 131, ¶ 19.

¶ 7 A parent may also waive their right to an adjudicatory hearing and choose instead to admit to part of or all of the allegations in a petition. C.R.J.P. 4.16(1) allows the court to accept a parent's admission after finding that (1) the parent understands their rights, the allegations contained in the petition, and the effect of the admission; and (2) the admission is voluntary. Although neither the statute nor the rule indicates that a parent's admission must be "knowing," such a requirement can be inferred from the language of

the rule, which requires that a court conclude that the parent "understands [their] rights." C.R.J.P. 4.16(1); *see* § 19-3-202(1), C.R.S. 2025.

¶ 8  We review the propriety of a parent's waiver as a mixed question of fact and law. *See People in Interest of B.H.*, 2021 CO 39, ¶ 50. We accept the court's findings of historic fact if supported by competent evidence in the record, but we review de novo the legal significance of those facts. *Id.*

## B.  Analysis

¶ 9  Mother contends she was "not in a proper frame of mind to make a knowing, voluntary and intelligent decision about whether or not to enter an admission to the allegations in the petition." Mother further asserts that she "was confused" and "repeatedly interjected and indicated confusion" about what her admission entailed when the court discussed the admission with her.

¶ 10  Conversely, the record shows there was no concern about mother's mental state when she entered the admission, and the juvenile court thoroughly advised mother of her rights and repeatedly confirmed that she wanted to enter an admission to the

petition before accepting her admission.  The court's advised

mother as follows:

> THE COURT: So, [mother], what I understand is that you are wanting to enter and in which [sic] — are actually that you're going to remain silent, but an admission would be entered against you as to injurious environment as to all four children.  Is that how you are wanting to proceed?
>
> [Mother]: Oh, yes, Your Honor.

¶ 11     The court, after adjusting the audio recording equipment,

confirmed:

> THE COURT: So, do you want to say that again?  Is that how you want to proceed?
>
> [Mother]: Yes, Your Honor.
>
> THE COURT: And have you had ample opportunity to speak with your attorney, [mother's counsel], about your decision today?
>
> [Mother]: Yes, Judge.
>
> THE COURT: And has anyone pressured you, promised you anything in return, or threatened you in order for you to enter this position today at this time?
>
> [Mother]: No, Your Honor.
>
> THE COURT: Are you under the influence of any alcohol, drugs, medication that impacts your ability to understand what is happening today?

[Mother]: No, Your Honor.

THE COURT: And you believe you do understand what is happening today?

[Mother]: Yes.

THE COURT: Do you understand if I accept your position, then we will not go forward on this jury trial and I'll release the jury. Do you understand that?

[Mother]: Yes.

THE COURT: And we've been here for a couple of days, and we're probably two thirds of the way through this jury trial, and you understand you're giving up your right to argue to the jury that the allegations brought against you by the Department are not true. Do you understand you're giving up that right?

[Mother]: Yes.

THE COURT: And you understand that if you enter an admission — well, if you take the position that [the court's] going to enter a default admission, and I'm gonna [sic] find that [the] children were in an injurious environment, then you understand that there would be no appeal from this adjudication, whereas you may be able to appeal the adjudication from the jury trial. Do you understand that?

[Mother]: Yes.

¶ 12    Afterward, the court again verified whether this was how mother wanted to proceed and mother responded by requesting a

few minutes with her counsel. The court told mother she could "have a few minutes," but if she needed more time, she would be able to meet with her counsel over the lunch hour because the court wanted to make sure that if the jury trial was moving forward, there would be enough time to complete it. Mother instead asked the court to repeat the question. The court responded as follows:

> THE COURT: So, the question is I want you to understand that if the jury enters a verdict and it is contrary to what you want, you would have a right to appeal to the Colorado Court of Appeals. I'll let [mother's counsel] identify for you if she believes it would be a good appeal, or if there would be problems with that appeal, that you would have a right to appeal that verdict. Do you understand that?
>
> [Mother]: Yes.
>
> THE COURT: But if you entered the — if you take the position and have me enter a default adjudication against you, there's not an appeal to that. You understand?
>
> [Mother]: Yes.

¶ 13    Mother's counsel clarified that mother would not lose the right to all possible appeals, only the right "for this particular instance regarding this jury trial." The court further explained what the next hearing would entail and how a treatment plan would be created

and adopted.  The court then again confirmed this was how mother wanted to proceed:

> THE COURT: Okay. So, I'll ask one last time, are you wanting me to enter an adjudication with you remaining silent?  And I understand why because there's a criminal case pending.  But I'm going to be making a finding, not the jury, but I'll be making a finding that the children are dependent and neglected based upon what was the facts filed in this case outlined in [the exhibit to the petition that describes the reason for Department involvement, family history, and recommended next steps], and that the children were in an injurious environment?  Is that how you want me to proceed?
>
> [Mother]: Yes, Your Honor.
>
> THE COURT: And so, I'll accept your admission.  I'll find — well before I do, [mother's counsel], do you believe this admission is freely, voluntarily and knowingly made?
>
> [Mother's Counsel]: I do, Your Honor.  Thank you.

¶ 14    The court then fully advised mother of her rights, including the possibility of termination of her parental rights and how the case would proceed from the adjudication.  Afterward, the court inquired whether mother wanted to move forward with the admission of the petition for a fourth time.

7

THE COURT: So, do you have any questions about your rights?

[Mother]: Not at this time.

THE COURT: Okay. Did my explanation of your full rights in this case change your mind as far as how you're wanting to proceed?

[Mother]: No.

THE COURT: Okay. So, I will enter an adjudication. I will allow you to remain silent. I will enter an adjudication, which means that I'm entering a decree finding that the children are dependent or neglected, and that is based upon the factual basis of [the exhibit to the petition that describes the reason for Department involvement, family history, and recommended next steps], and allowing you to remain silent. So, you're not telling me whether you believe it to be true or not, [I am] not requiring that. But I am entering the adjudication.

¶ 15     Thus, our review of the record reveals that the juvenile court ensured that mother understood her rights, the allegations in the petition, and the consequences of her admission. Therefore, we conclude that the court did not err by concluding that mother's admission was knowing and voluntary. Because mother validly waived her right to a jury trial, we see no basis for her contention that the procedures afforded to her violated her right to due process. *See People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo.

8

App. 2007) (explaining that due process requires, at a minimum, notice and the opportunity to protect one's rights).

### III.   Mother's Child Hearsay Argument is Waived

¶ 16    The Department, the counsel for youth, and the guardian ad litem argue that mother waived her challenge of improper child hearsay evidence when she entered an admission to the petition after receiving an advisement.  We agree.  Because we conclude that mother's challenge to the adjudication judgment is waived, we do not address the merits of her child hearsay argument.

### IV.   Mother's Ineffective Assistance of Counsel Claim Fails

¶ 17    Mother alleges that her counsel was ineffective during the jury trial because counsel failed to (1) properly advise her of the consequences of entering an admission before she did so; (2) share the contents of P.A.'s forensic interview with her before the trial; (3) inform her that the forensic interview could have been admitted during trial; and (4) file a motion in limine concerning the admission of the forensic interview.  We disagree.

#### A.   Relevant Law

¶ 18    A parent has a statutory right to appointed counsel in dependency and neglect proceedings.  §§ 19-1-105(2), 19-3-202(1),

C.R.S. 2025.  A parent's statutory right to counsel includes the right to effective assistance of counsel.  *A.R. v. D.R.*, 2020 CO 10, ¶ 47.

¶ 19    We employ the same *Strickland* test that is used in criminal cases to evaluate ineffective assistance of counsel claims in dependency and neglect proceedings.  *See id.* at ¶¶ 48, 60 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).  Under this test, to establish a claim, the parent must show that (1) counsel's performance was outside the wide range of professionally competent assistance, and (2) the parent was prejudiced by counsel's deficient performance — that is, there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different.  *Id.* at ¶ 60.  "If the parent fails to establish either prong of this test, the claim fails."  *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

## B.    Analysis

¶ 20    Because mother does not meet the prejudice prong of the *Strickland* test, her claim fails.

¶ 21    First, we note that even if we assume, without deciding, that mother's counsel did not properly advise her of the consequences of

entering an admission, the record as described above in section II.B. shows that the court properly advised mother about any such consequences. Therefore, mother was not prejudiced by any alleged deficiencies in her counsel's advisement on entering an admission.

¶ 22 As to her second and third ineffective assistance allegations, mother fails to explain how personally reviewing the contents or receiving notice of the potential admission of the child P.A.'s forensic interview would have impacted the ultimate outcome of the case. Even if the forensic interview had not been admitted, P.A. was listed as a witness and called to testify during the trial. As mother's counsel pointed out during the trial, P.A. could testify about all the alleged incidents contained in the forensic interview.

¶ 23 Mother further alleges that, if she had been able to present her case in chief and testify, she would have presented evidence that she had resolved the child protection concerns that initiated the case, and thus, there was a "good chance" that the jury would have declined to adjudicate the children dependent or neglected.

¶ 24 However, this argument ignores the permanency caseworker's earlier testimony about mother's progress. The caseworker testified that mother had, to her knowledge, separated from her partner,

obtained stable housing, completed parenting classes, begun participating in therapy, and presented no ongoing concerns for alcohol abuse — all of which mother asserts proves she had resolved her child protection concerns. But the caseworker testified that despite mother's progress, she still had concerns for the children's safety in mother's care and the caseworker did not believe she had seen meaningful changes in mother's behavior. Mother describes no purported testimony that would have refuted the caseworker's concerns. Furthermore, mother's admission came before *any* of the parties finished presenting evidence. Thus, her argument merely assumes there would have been no additional evidence presented to refute her claims.

¶ 25 As to her fourth argument, even assuming mother's counsel's failure to file a motion in limine was deficient, mother does not establish that the forensic interview would have been definitively excluded. And, as discussed above, given that the child was available to testify, mother cannot establish prejudice resulting from the forensic interview's admission.

¶ 26 We conclude mother has not alleged sufficiently specific or compelling allegations of prejudice to constitute a prima facie

showing of ineffective assistance of counsel and we therefore reject her claims.

## V.    Disposition

¶ 27    The judgment is affirmed.

JUDGE FREYRE and JUDGE YUN concur.